PAULINE E. HIGGINS, ADMINISTRATRIX (ESTATE OF WILLIAM HIGGINS), ET AL. *v.* THE CONNECTICUT LIGHT AND POWER COMPANY.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued January 8—decided February 3, 1943.

*Samuel H. Platcow,* for the appellant (plaintiff Jacobson).

*William L. Hadden,* with whom, on the brief, was *Clarence A. Hadden,* for the appellant (named plaintiff).

*Walter F. Torrance*, with whom, on the brief, was *David N. Torrance*, for the appellee (defendant).

DICKENSON, J. This action was brought under the provisions of General Statutes, Sup. 1941, § 822f, which, under certain prescribed conditions, allows a joinder of several plaintiffs in one action involving rights to relief arising out of the same transaction. The plaintiff's intestate, Higgins, and the other plaintiff, Jacobson, were employed by the highway department of the state of Connecticut in trimming trees in a public highway of the state. While so engaged Higgins came in contact with a high tension wire of the defendant and was electrocuted. Jacobson claimed to have suffered an electric shock at the same time. He fell to the ground and was injured. From a judgment on a verdict for the defendant the plaintiffs have appealed.

The complaint charged negligence and nuisance. The defendant filed two special defenses setting up contributory negligence, the second defense alleging a custom or usage known to the plaintiffs which they violated. The plaintiffs demurred to the second defense, the demurrer was overruled and they assigned this as error. The substance of the defense was that the plaintiffs were guilty of contributory negligence in that they failed to follow a custom of the state highway employees with which they were familiar, which required that whenever trees in close proximity to high tension wires were to be trimmed or cut the employee doing the work was to notify the defendant so that it might cover its wires to prevent injury, and that it was the custom of the defendant to do this at any time upon request. The ground of demurrer pursued in the plaintiffs' brief is that the highway department and its employees had no legal right to

establish a custom, rule or practice which would relieve the defendant from a fundamental duty imposed by law. Custom is not based upon legal right but sometimes establishes such a right or a duty. A systematic course of conduct on the part of a body of men acting for a common purpose may be shown on the issue of negligence. *Moffitt* v. *Connecticut Co.*, 86 Conn. 527, 530, 86 Atl. 16, and see *Wray* v. *Fairfield Amusement Co.*, 126 Conn. 221, 224, 10 Atl. (2d) 600. The trial court was correct in overruling the demurrer.

Of the numerous assignments of error, many of which are without merit, we find one to be determinative of the appeal and confine our discussion largely thereto. The plaintiffs claimed to have proved the following facts: Higgins and Jacobson had been in the employ of the highway department engaged in roadside development work for some five years. This work included the care of trees on public highways. The defendant was engaged in the business of distributing electric current and maintained wires above public highways for that purpose. On August 17, 1940, Higgins and Jacobson were engaged in trimming a tree on a main highway of the state which ran east and west. The defendant maintained a pole on the highway ten to twelve feet east of the tree with two crossarms carrying electric transmission wires of high voltage, which passed near the tree. It knew that state employees would have occasion to climb the tree from time to time to care for it. On the day in question, Higgins was working near the top of the tree. It was raining and the bark of the tree was wet. He had been wearing a safety rope but had removed it preparatory to sawing off the center trunk of the tree, to which it was attached. Jacobson, in order to do some work, placed a ladder against the tree and mounted to a point somewhat below Higgins, who

was standing in a crotch of the tree. Having completed his work, Jacobson began to descend the ladder. He saw Higgins start to swing in the direction of the high tension wires in order to saw the trunk. As he descended he heard Higgins exclaim, looked up and saw him lying back against a limb of the tree holding in his left hand the wire nearest the tree. He had been electrocuted. Higgins' contact with the tree charged this with electricity, and Jacobson, who had an arm about the trunk, received electric shocks and was thrown to the ground. The wire Higgins came in contact with had a weatherproof covering but was not insulated. Good engineering practice and common rules of safety required that the wires should have been insulated or, uninsulated as they were, should have been so installed and maintained that they would have been farther from the trunk of the tree.

The defendant's claims of proof were as follows: The wires were sufficiently distant from the tree to conform to good engineering practice and ordinary rules of safety. Insulation of high tension wires is not feasible or practicable. The wire with which Higgins came in contact was twenty-nine and one-half feet above the ground. A custom existed whereby, upon request of a foreman of the highway department when its employees were obliged to top trees near high tension wires, the defendant would arrange to send its own employees to cover them with temporary insulation, and the plaintiffs were acquainted with this custom and also with a practice of the highway department which permitted them to decline to work about high tension wires unless they were insulated. Higgins, while standing in the crotch of the tree, put his right arm around the trunk, apparently preparatory to swinging about it to descend; while doing so, in some manner he slipped and grabbed the nearest wire in

order to save himself from falling. Jacobson at this time had one foot on the top round of the ladder and the other in the crotch of the tree above it. Sufficient current did not come through the tree when Higgins touched the wire to burn or injure Jacobson had he remained in contact with the tree.

The plaintiffs claimed that they had established a right to recover upon the ground of absolute nuisance as well as negligence, and that the trial court erred in failing to instruct the jury in the law relating to such nuisance and its effect on contributory negligence as a defense. *Zatkin* v. *Katz,* 126 Conn. 445, 449, 11 Atl. (2d) 843. No recovery could be had for a private nuisance for no interest in land was involved; *Webel* v. *Yale University,* 125 Conn. 515, 525, 7 Atl. (2d) 215. As to the claim of a public nuisance, it is undisputed that the wires were in a public place; and that a private individual may create a nuisance in a public place cannot be questioned. *Hanlon* v. *Waterbury,* 108 Conn. 197, 200, 142 Atl. 681. *Spagnolo* v. *Lanza,* 110 Conn. 178, 181, 147 Atl. 594. But the plaintiffs have not sued as members of the general public, nor does the request to charge which was refused so characterize them. "Nuisances are public where they violate public rights, and produce a common injury," and where they constitute an obstruction to public rights, "that is, the rights enjoyed by citizens as part of the public." 39 Am. Jur. 286. ". . . if the annoyance is one that is common to the public generally, then it is a public nuisance. . . . The test is not the number of persons annoyed, but the possibility of annoyance to the public by the invasion of its rights. A public nuisance is one that injures the citizens generally who may be so circumstanced as to come within its influence." *Nolan* v. *New Britain,* 69 Conn. 668, 678, 38 Atl. 703; *Hassett* v. *Palmer,* 126 Conn. 468,

476, 12 Atl. (2d) 646; *Croughwell* v. *Chase Brass & Copper Co.*, 128 Conn. 110, 112, 20 Atl. (2d) 619. The rule is well established, based upon reason and applicable to the instant case. There is no claim of proof that the wires were dangerous to the public generally. It is not expected that the general public will climb thirty-foot trees in the highway. Obviously, the plaintiffs' claim for recovery was based upon their peculiar and particular relation to the defendant and not upon their rights as members of the general public. *Valin* v. *Jewell*, 88 Conn. 151, 154, 90 Atl. 36. The trial court was correct in refusing this request to charge.

The case, then, resolves itself into one based upon negligence alone and we consider the sole point, raised in oral argument by the plaintiff Higgins, that the trial court in numerous instructions placed the burden of proof of absence of contributory negligence upon the plaintiffs in violation of the statutory provision requiring the defendant to prove contributory negligence.

Early in the charge the court instructed the jury in the general law relating to the proof of negligence and concluded with the statement that "the plaintiffs must remove the question of accidental means in order to recover in the case. The burden of proof that this or these injuries were not the result of an accident in which neither of the parties or not any of the parties were negligent, rests upon the plaintiffs." The gist of the complaint was that the wires were improperly located and maintained in view of the danger, and "accidental means" could only refer to the conduct of the plaintiffs. As to Higgins the claim of the defendant was that he slipped and grasped the wire to save himself. If his slipping was accidental in the sense that it was not caused by his negligence, it would

not bar him from recovery providing negligence of the defendant in locating and maintaining its wires was established as a proximate cause of the death. *Runyan* v. *Water & Light Co.*, 68 W. Va. 609, 613, 71 S. E. 259. In fact, such negligence and accident are antithetical, because an accident is an unexpected happening and negligence is based on something reasonably to be anticipated. As regards the negligence of the defendant in an accident happening to the plaintiff Higgins, the question is, was the risk of injury within the general class of risks which the defendant was reasonably bound to anticipate? *Orlo* v. *Connecticut Co.*, 128 Conn. 231, 237, 21 Atl. (2d) 402. The nature of the work the plaintiffs were doing was such as to involve a likelihood that some such accident as Higgins slipping would happen, and certainly it could not be said as matter of law that the risk from such an accident was not within the scope of those which the defendant was reasonably bound to anticipate. *Cutler* v. *Putnam Light & Power Co.*, 80 Conn. 470, 477, 68 Atl. 1006; *Fitzgerald* v. *Edison Electric Co.*, 200 Pa. 540, 543, 50 Atl. 161; and see *Porpora* v. *New Haven*, 119 Conn. 476, 482, 177 Atl. 531; *Hassett* v. *Palmer*, 126 Conn. 468, 474, 12 Atl. (2d) 646. The effect of the charge was to instruct the jury that if the injury resulted from an accident to Higgins there could be no recovery as matter of law, and this was error.

This point was emphasized as the charge proceeded. Reference is made to "accidental means on the part of Mr. Higgins" as one of the claims of the defendant absolving it from liability; and later, when dealing specifically with contributory negligence, the court stated that the defendant claimed that Higgins came in contact with the wire "either negligently on his part, or accidentally on his part," and, "as I have

said, if he came into contact with it negligently upon his part, the burden of proof upon all the evidence rests upon the defendant; that he did not come in contact with it accidentally the burden of proof of that fact rests upon the plaintiff." While the court positively stated that the defendant had the burden of proving that Higgins came in contact with the wire negligently, it also stated in effect that if Higgins slipped accidentally the plaintiffs could not recover, and the burden was upon them to prove that his slipping was not accidental. Still later the court explicitly charged that, if the plaintiff Higgins came in contact with the wire accidentally through some unforeseen means "such as slipping in the tree or for some other accidental reason, then, so far as this defendant is concerned, it would be an accident for which the defendant would not be liable and no right of recovery under such condition would exist." This instruction was so definite that, although the court had elsewhere charged that the defendant was required to prove that Higgins came in contact with the wire negligently, it was harmful error. This is not that type of charge of which we have said that read as a whole it renders an error harmless because the jury could not have been misled; *Stanco* v. *H. L. Green Co.*, 127 Conn. 422, 425, 426, 17 Atl. (2d) 512; but rather one where the instruction "gave rise to 'contradiction, sharp and absolute, upon a fundamental and vital point' "; *Caschetto* v. *Silliman & Godfrey Co., Inc.*, 126 Conn. 22, 26, 9 Atl. (2d) 286, quoting from *Brennan* v. *Cassidy*, 99 Conn. 422, 426, 122 Atl. 96.

The error affects both plaintiffs. The trial court charged that, if the jury found the injuries "were the result of accidental slipping or other accidental means on the part of Higgins, which caused the injuries to

both him and Jacobson, then no right of recovery from this defendant exists."

A new trial being necessary, we consider one other assignment of error involving matters that might arise therein. We have previously discussed the claim of custom as this related to the demurrer and held that it was properly in the case. The plaintiffs assign further error in respect to it on rulings on evidence. The only claim of error pursued in the brief is because of the admission of a form letter of instruction relating to the claim of custom. In itself this was not conclusive of such a custom. The objection to it was that it was not brought home to the plaintiffs. The defendant was not obliged to prove this fact by one witness. It might show knowledge or notice by other witnesses, and so far as we may know from the record it may have done this. There was no error as to the ruling.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.