## MAUREEN KELSEY, ADMINISTRATRIX (ESTATE OF ROBERT KELSEY) *v.* SCHOOLGROUND THREE

Superior Court, Judicial District of New Haven
File No. CV-02-0460241S

Memorandum filed March 18, 2005

*Susman, Duffy & Segaloff, P.C.*, for the plaintiff.

*Law Offices of John F. Della Jacono*, for the defendant.

ROBAINA, J. The defendant, Schoolground Three, a Connecticut general partnership, has filed a motion for summary judgment, alleging that the claim of absolute nuisance by the plaintiff, Maureen Kelsey, administratrix of the estate of her deceased husband, Robert Kelsey, cannot be supported as a matter of law. For the reasons stated herein, the defendant's motion for summary judgment is granted.

The plaintiff brought this action against the defendant for injuries sustained by her late husband. The complaint alleges the following facts. The plaintiff's decedent was an employee of Arga Computer and Mailing Services (Arga) located at 100 Shaw Road, North Branford, on premises leased from the defendant. The defendant owned property consisting of four buildings: 50 Shaw Road; 100 Shaw Road; 200 Shaw Road; and 300 Shaw Road, along with accompanying parking lots, walking areas and Shaw Road itself, a private road used by businesses on the premises. On January 19, 1999, the plaintiff's decedent slipped and fell on ice in a parking lot adjacent to Arga's leased premises at 100 Shaw Road. The second count of the complaint, claiming absolute nuisance, alleges the following: "The premises at 300 Shaw Road are situated on an elevation above 100 Shaw Road and the parking lot and improvements thereon are configured in a manner which collects and discharges surface waters and drainage runoff from 300 Shaw Road onto the parking lot and premises of 100 Shaw Road. The collection [and] discharge of surface waters and drainage runoff from 300 Shaw Road is or was a condition having a natural tendency to create danger and inflict injury upon the Plaintiff's decedent, business invitees at the premises and members of the

public at large and the maintenance by the Defendant of the property in the aforesaid defective condition was a nuisance or in the nature of a nuisance which the Defendant created, permitted, continued and/or maintained and all of which the Defendant knew of or intended."

Robert Kelsey died of unrelated causes on or about November 16, 2000, and his wife was appointed administratrix of his estate. She brought a three count complaint against the defendant on December 20, 2001, alleging negligence, absolute nuisance and negligent nuisance. On May 2, 2002, the defendant filed an answer admitting that it owned the property in question and alleging that "the premises at 300 Shaw Road are situated on an elevation above 100 Shaw Road and the parking lot," along with denying the plaintiff's other allegations. Additionally, the defendant filed special defenses and asserted both negligence on the part of the plaintiff's decedent and that the action was time barred by the applicable statute of limitations. The defendant filed a motion for summary judgment as to the entire complaint, which was granted as to the negligence and negligent nuisance counts, but denied on the absolute nuisance count.

Since that ruling in May, 2004, the parties have pursued their discovery, including, but not limited to, the taking of the deposition of Robert Dow, general partner of the defendant. On August 10, 2004, this court granted the defendant's motion for permission to file a motion for summary judgment as to count two, which alleged absolute nuisance. The defendant submitted a memorandum of law with exhibits consisting of the warranty deed conveying the property to the defendant, excerpts of Dow's deposition testimony and some relevant case law. The plaintiff has not objected to the motion and has not provided the court with any substantive evidence disputing the defendant's allegations.

Pursuant to Practice Book § 17-49, "summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Webster Bank* v. *Oakley*, 265 Conn. 539, 545, 830 A.2d 139 (2003), cert. denied, 541 U.S. 903, 124 S. Ct. 1603, 158 L. Ed. 2d 244 (2004). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 252, 819 A.2d 773 (2003). "It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue." (Internal quotation marks omitted.) Id., 252–53, quoting *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, 259 Conn. 527, 550, 791 A.2d 489 (2002). Where the adverse party does not oppose a motion for summary judgment, as in the present case, "the court is entitled to rely upon the facts stated in the affidavit of the movant." *Bartha* v. *Waterbury House Wrecking Co.*, 190 Conn. 8, 11–12, 459 A.2d 115 (1983).

The second count of the plaintiff's complaint alleged that the defendant knew and "created, permitted, continued and/or maintained" a defective condition on its property that had a natural tendency to create danger and inflict injury, and that the defective condition was an absolute nuisance. In support of its motion, the defendant relies on two arguments. First, the defendant

contends that the alleged conditions causing the injuries to the plaintiff's decedent were on private property and that the plaintiff's decedent was not injured in the exercise of a public right. The defendant additionally argues that the conditions leading to the injuries to the plaintiff's decedent were not constructed, developed or modified by the defendant and that the conditions were present when the defendant purchased the property in 1987.

To establish a general nuisance claim, "a plaintiff must prove that: (1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was a proximate cause of the plaintiffs' injuries and damages." (Internal quotation marks omitted.) *State* v. *Tippetts-Abbett-McCarthy-Stratton*, 204 Conn. 177, 183, 527 A.2d 688 (1987).

The defendant is correct in initially concluding that the claim of absolute nuisance by the plaintiff's decedent cannot be classified as a private nuisance because a private nuisance "exists only where one is injured in relation to a right which he enjoys by reason of his ownership of an interest in land." *Webel* v. *Yale University*, 125 Conn. 515, 525, 7 A.2d 215 (1939). Because the injuries to the plaintiff's decedent occurred at his place of employment and not on his private property, and the plaintiff's decedent did not allege an injury associated with the ownership of an interest of land, the nuisance claim should not be properly classified as a public nuisance.

Absolute public nuisance claims also require a plaintiff to prove two additional elements: "(1) that the condition or conduct complained of interfered with a right common to the general public . . . and (2) that the

alleged nuisance was absolute, that is, that the defendants' intentional conduct, rather than their negligence, caused the condition deemed to be a nuisance." (Citations omitted.) *State* v. *Tippetts-Abbett-McCarthy-Stratton*, supra, 204 Conn. 183. "Intentional, in this context, means that not a wrong or the existence of a nuisance was intended, but that the creator of [it] intended to bring about the conditions which are in fact found to be a nuisance." (Internal quotation marks omitted.) *Green* v. *Ensign-Bickford Co.*, 25 Conn. App. 479, 490, 595 A.2d 1383, cert. denied, 220 Conn. 919, 597 A.2d 341 (1991); *Beckwith* v. *Stratford*, 129 Conn. 506, 510–11, 29 A.2d 775 (1942).

Specifically, the defendant asserts that the plaintiff's decedent, a business invitee and employee of Arga, was not exercising a public right while walking and eventually slipping on the parking lot adjacent to 100 Shaw Road. Although this motion was unopposed, the defendant identifies part of the plaintiff's argument that speaks to the issue, namely, that because Shaw Road and the accompanying buildings, parking lots and walkways were accessible to the general public, any conditions leading to injuries could be classified as a public nuisance.

Generally, to prove the existence of a public right, a court looks to whether the alleged condition is one that is common to the public. "The test is not the number of persons annoyed, but the possibility of annoyance to the public by the invasion of its rights. A public nuisance is one that injures the citizens generally who may be so circumstanced as to come within its influence." (Internal quotation marks omitted.) *Couture* v. *Board of Education*, 6 Conn. App. 309, 315, 505 A.2d 432 (1986); see also *Higgins* v. *Connecticut Light & Power Co.*, 129 Conn. 606, 611–12, 30 A.2d 388 (1943). Although most public nuisance claims are directed at governmental entities, there have been cases in which

public nuisance claims have been brought on the basis of injuries occurring on private properties. In those situations, our Supreme Court has held that where an individual who enters the subject premises at the express or implied invitation of a tenant (or property owner) does not come upon them in the exercise of any public right, but is there by reason of a right extended to him by the tenant, and, if injured, the visitor to the premises cannot base his right to recover on the existence of a public nuisance. *Webel* v. *Yale University*, supra, 125 Conn. 524–25; *Dahlstrom* v. *Roosevelt Mills, Inc.*, 27 Conn. Sup. 355, 357, 238 A.2d 431 (1967).

In support of its position, the defendant relies primarily on *Cimino* v. *Yale University*, 638 F. Sup. 952 (D. Conn. 1986), and *Dahlstrom*. In *Cimino*, the plaintiff sued the university for injuries sustained after a crowd pulled down the goalposts at the Yale Bowl following a football game. In granting the defendant's motion for summary judgment to dismiss the public nuisance count, the court cited a number of cases involving public rights on private property. Id., 954–55. The opinion directly cites *Dahlstrom*. Id., 955. In *Dahlstrom*, the plaintiff, at that time, a child two years of age, was injured in a store owned by the defendant. The minor child's parents brought an action in public nuisance, but the defendant demurred, arguing that the plaintiff was not exercising a public right when entering the store. The court held that although the store generally welcomed patrons inside, the plaintiff was not entitled to do so by any virtue of a public right enjoyed by public citizens. *Dahlstrom* v. *Roosevelt Mills, Inc.*, supra, 27 Conn. Sup. 357.

The defendant here admits that it owned the property in question. Viewed in the light most favorable to the plaintiff, the buildings, parking lots, walkways and Shaw Road itself are all accessible to the general public,

even though individuals entering the premises are most likely business invitees who make use of the businesses located in the four buildings owned and leased out by the defendant. Although questions evaluating the validity of a nuisance claim are ordinarily questions of fact, the case law speaks to the contrary. Like the minor child in the store in *Dahlstrom* and the spectator at the Yale Bowl in *Cimino,* the plaintiff's decedent was unquestionably allowed to enter the subject premises. Here, the plaintiff's decedent entered the North Branford property in furtherance of his employment and had full access to all parts of the property. The court is convinced by the relevant facts and case law, however, that the plaintiff's decedent was not entitled to enter the premises by virtue of a public right enjoyed by citizens as part of the public.

On the basis of the court's conclusion that the plaintiff cannot satisfy her burden of proving that the condition or conduct complained of interfered with a right common to the general public, discussion regarding the defendant's additional argument is moot. It should be noted, however, that in support of its secondary claim, the defendant relies on the warranty deed and the deposition of Dow, general partner of the defendant. Dow's deposition testimony indicates that the property the defendant purchased in 1987 was in substantially the same condition as the property was in at the time of the accident, and that the buildings, parking lots and adjacent areas were all fully developed at the time of the purchase. Because the plaintiff has not disputed this issue in an opposition to the motion, those statements must be accepted as true.

Summary judgment is rendered in favor of the defendant with regard to the second count of the plaintiff's complaint claiming absolute nuisance.